# EXHIBIT A

**COMMONWEALTH OF MASSACHUSETTS**

**WORCESTER, ss.**                                    **DEPARTMENT OF THE TRIAL COURT**
                                                      **WORCESTER SUPERIOR COURT**

AUBURN WATER DISTRICT,                              )
                                                   )
      Plaintiff,                                )
                                                   )
vs.                                                )
                                                   )
AGC CHEMICAL AMERICAS, INC.;                       )
AGC, INC. F/K/A ASAHI GLASS CO.;                   )
ARCHROMA U.S., INC.; ARKEMA INC.;                  )
BASF CORPORATION; BUCKEYE FIRE                     )
EQUIPMENT COMPANY; CARRIER                         )
GLOBAL CORPORATION; CHEMDESIGN                     )
PRODUCTS, INC.; CHEMGUARD, INC.;                   )
CHEMICALS INCORPORATED; CHUBB                      )
FIRE, LTD.; CLARIANT CORP.;                        )
DEEPWATER CHEMICALS, INC.; DOE                     )
DEFENDANTS, JOHN 1-49; DYNAX                       )
CORP.; KIDDE PLC INC.; NATIONAL                    )
FOAM, INC.; NATION FORD CHEMICAL                   )
COMPANY; RAYTHEON TECHNOLOGIES                     )
CORPORATION F/K/A UNITED                           )
TECHNOLOGIES CORPORATION; TYCO                     )
FIRE PRODUCTS, LP; AND UTC FIRE &                  )
SECURITY AMERICAS CORPORATION,                     )
                                                   )
      Defendants.                               )

## COMPLAINT

      Plaintiff Auburn Water District ("Plaintiff"), by and through its undersigned counsel,

brings this action against Defendants AGC Chemical Americas, Inc., AGC, Inc. f/k/a Asahi

Glass Co., Archroma US, Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment

Company,  Carrier Global Corporation, ChemDesign Products, Inc., Chemguard, Inc.,

Chemicals Incorporated, Chubb Fire, LTD., Clariant Corp., Deepwater Chemicals, Inc., John

Doe Defendants 1-49, Dynax Corp.,  Kidde PLC Inc., National Foam Inc., Nation Ford

1

Chemical Company, Raytheon Technologies Corporation f/k/a United Technologies
Corporation, Tyco Fire Products, LP, and UTC Fire & Security Americas Corporation
(collectively, "Defendants"). Plaintiff, based on information, belief and investigation of
Counsel, alleges as follows:

## I.     SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover the considerable costs and
damages that it has incurred and will inevitably continue to incur—as a result of the presence of
toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), on Plaintiff's real
property and in Plaintiff's drinking water sources.

2.      Plaintiff owns and operates a public water system that provides potable water to the
Town of Auburn.  Plaintiff draws raw water from 12 groundwater wells, treats the raw water at one
of its three pumping stations or three water treatment plants, and distributes water to customers.
Plaintiff's property, water sources and supply, water supply and delivery system infrastructure,
including any treatment systems, are collectively referred to as "Plaintiff's Property" in this
Complaint.

3.      Plaintiff has detected PFAS compounds, including perfluorooctanoic acid ("PFOA")
and perfluorooctane sulfonate ("PFOS"), in its water supplies.  PFOA and PFOS have long been
manufactured as components for aqueous film-forming foam ("AFFF")—a product used to control
and extinguish aviation, marine, fuel, and other shallow spill fires.

4.      PFOA and PFOS both are known to be toxic, persistent in the environment, and
resistant to biodegradation.  These compounds move easily through soil and groundwater and pose
a significant risk to environmental and human health and safety. Both are animal carcinogens and
likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA")
has stated that "human epidemiology data report associations between PFOA exposure and high

2

cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

5.      Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Massachusetts.

6.      At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

7.      At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant

---

[1] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No. 822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023); *see also* EPA, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005 (May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt (last accessed May 8, 2023).

Products, as Defendants did not disclose the toxic nature and harmful effects of their

Fluorosurfactant Products.

8.      As a result of Defendants' unreasonable acts and omissions, PFAS compounds

entered critical sources of water relied upon by Plaintiff to provide for its residents and employees,

and have contaminated Plaintiff's Property—thereby subjecting Plaintiff's customers and the

general public to the inherent danger of these chemicals. As the manufacturers and sellers of

Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into

Plaintiff's Property.

9.      Through this action, Plaintiff now seeks to recover all available damages arising

from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants'

actions as asserted herein. Such damages include, but are not limited to, the past and future

incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment

of Plaintiff's Property.

## II.    PARTIES

*A.    PLAINTIFFS*

10.      The Auburn Water District was founded in 1947 by the Commonwealth of

Massachusetts, Chapter 585 of the General Laws of Massachusetts. Its primary address is 75

Church Street, Auburn, Massachusetts 01501. Plaintiff operates its public water supply system

pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f)(15), and the reporting system of the

U.S. EPA.

11.      Plaintiff has detected PFAS in at least one of its water sources.

12.      A number of local fire departments provide fire and emergency medical response

services to the area surrounding Plaintiff's Property. Upon information and belief, Defendants'

4

AFFF products were used for fire-training and fire-fighting activities at sites in and/or around

Plaintiff's Property.

13.    Plaintiff has a property interest in the water it appropriates, treats, stores, and

distributes to the public, as well as an interest in Plaintiff's Property.

B.    *DEFENDANTS*

14.    Upon information and belief, the following Defendants designed, manufactured,

formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have

contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

15.    **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a

Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201,

Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC,

Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

16.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation

organized under the laws of Japan and does business throughout the United States. AGC has its

principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

17.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware

corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North

Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma

Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

18.    **ARKEMA:** Defendant Arkema Inc. is a corporation organized and existing under

the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King

of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

19.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

20.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

21.    **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

22.    **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

23.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

24.    **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

25.    **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries

6

and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C.,

Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC

Climate, Controls & Security, a unit of United Technologies Corporation.

26.    **CLARIANT:** Defendant Clariant Corp. ("Clariant") is a New York corporation

with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

27.    **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a

Delaware corporation with its principal place of business located at 196122 E County Road 40,

Woodward, Oklahoma 73801.

28.    **DYNAX:** Defendant Dynax Corp. ("Dynax") is a Delaware corporation with its

principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon

information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

29.    **KIDDE PLC:** Defendant Kidde PLC Inc. ("Kidde PLC.") is a Delaware

corporation with its principal place of business located at 9 Farm Springs Road, Farmington,

Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams

Holdings, Inc. and/or Williams US, Inc.

30.    **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a

corporation organized under the laws of the State of Delaware, with its principal place of business

located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus

Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation

(collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that

contained PFOA.

31.    **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a

South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South

Carolina 29715.

7

32.    **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies

Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a

Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington,

Connecticut 06032.

33.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership

organized and existing under the laws of the State of Delaware with its principal place of business

located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

34.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls

International P.L.C., an Irish public limited company listed on the New York Stock Exchange

35.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to

the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco

as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times

relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression

products, including AFFF that contained fluorocarbon surfactants containing PFAS.

36.    **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE

Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at

3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United

Technologies Corporation.

37.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or

sellers of AFFF products. Although the identities of the John Doe Defendants are currently

unknown, it is expected that their names will be ascertained during discovery, at which time the

Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint

as Defendants.

38.     All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of Massachusetts.

39.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

40.     The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.     JURISDICTION & VENUE

41.     This Court has jurisdiction pursuant to M.G.A.212 § 3 because this is a civil action for damages in an amount that exceeds the minimal jurisdictional limits of this Court.

42.     Venue is appropriate in this county because it is the county in which Plaintiff is located and has its usual place of business.

### IV.     FACTUAL ALLEGATIONS

*A.*     *THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS*

43.     Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in

9

which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

44.     PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

45.     PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

46.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

47.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

48.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth

---

[2] *See* note 1, *supra.*

[3] *See id.*

weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g.,

tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other

effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the

carcinogenic potential for PFOA and PFOS in humans.[5]

49.    Additionally, the EPA has noted that "drinking water can be an additional source

[of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have

contaminated water supplies." In communities with contaminated water supplies, "such

contamination is typically localized and associated with a specific facility, for example […] an

airfield at which [PFOA/PFOS] were used for firefighting."[6]

50.    EPA continues to research the effects of PFAS. In June 2022, after evaluating over

400 studies published since 2016 and applying human health risk assessment approaches, tools, and

models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure

at which negative outcomes could occur are much lower than previously understood when the

agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt). EPA announced

new Interim Updates Health Advisory levels of 0.004 ppt for PFOA and 0.02 ppt for PFOS.[7]

---

[4] See EPA, *Fact Sheet PFOA & PFOS Drinking Water Health Advisories*, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 8, 2023).

[5] See EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023).

[6] See note 4, *supra*.

[7] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, EPA Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed May 8, 2023).

11

B.  *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA*
    *AT THE RELEVANT TIME PERIOD*

51.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

52.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

53.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. PFHxS is also formed during this process. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

54.    When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

55.    Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

56.    Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

57.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture,

distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

58.     Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Massachusetts for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's Property.

59.     Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C.     *DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED*

60.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

61.     At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

62.     For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a

person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[8]

63.      By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

64.      In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

65.      Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

66.      Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

---

[8] See Office of Minnesota Attorney General, Exhibit List, No. 1588, Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1588.pdf (last accessed May 8, 2023).

[9] See DuPont, C-8 Blood Sampling Results, available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC4 9KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0OMC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

[10] See 3M, Internal Memorandum, Organic Fluorine Levels, (August 31, 1984), available at https://static.ewg.org/files/226-0483.pdf?_gl=1*1u237yp*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4y LjEuMTY4MzU4Nzk0OMC4wLjAuMA..&_ga=2.39402538.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

67.     After 3M exited the AFFF market in the United States, the remaining AFFF

manufacturer Defendants continued to manufacture and sell AFFF containing PFOA and/or its

chemical precursors.

68.     From 1951, Old DuPont, and on information and belief, Chemours, designed,

manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware,

and more recently PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of

AFFF products.

69.     Based on information and belief, by no later than 2001, Old DuPont manufactured,

produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks containing or

degrading into PFOA to some or all of the AFFF product manufacturers for use in their AFFF

products that were discharged into the environment and contaminated Plaintiff's Property.

70.     Old DuPont had been studying the potential toxicity of PFOA since at least the

1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not

disclose to the public or to government regulators what they knew about the substance's potential

effects on humans, animals, or the environment.[11]

71.     By December 2005, the EPA uncovered evidence that Old DuPont concealed the

environmental and health effects of PFOA, and the EPA announced the "Largest Environmental

Administrative Penalty in Agency History."  The EPA fined Old DuPont $16,500,000 for violating

the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA

substantial risk information about chemicals they manufacture, process or distribute in

commerce."[12]

---

[11] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed May 8, 2023).

[12] *Id.*

72.     By July 2011, Old DuPont could no longer credibly dispute the human toxicity of

PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement

of a class action over Old DuPont's releases from the Washington Works plant had reviewed the

available scientific evidence and notified Old DuPont of a "probable link"[13] between PFOA

exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and

preeclampsia.[14]   By October 2012, the C8 Science Panel had notified Old DuPont of a probable

link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease,

testicular cancer, and ulcerative colitis.

73.     In July 2015, Old DuPont spun off its chemicals division by creating Chemours as a

new publicly-traded company, once wholly owned by Old DuPont. By mid-2015, Old DuPont had

dumped its perfluourinated chemical liabilities into the lap of the new Chemours.

74.     Defendants knew, or reasonably should have known, at all times relevant to this

action that it was substantially certain that their acts and omissions as set forth herein would

threaten public health, cause extensive contamination of Plaintiff's Property and otherwise cause

the injuries described herein.

75.     Notwithstanding their respective knowledge of the dangers involved with AFFF

containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured,

marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF

should be used and disposed of (namely, by washing the foam into the soil and/or waste water

---

[13] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed May 8, 2023).

[14] *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed May 8, 2023).

disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

76.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

77.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

D.     THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION

78.     PFAS compounds have been detected in varying amounts, at varying times in water extracted from Plaintiff's water sources.  On at least one occasion, PFAS have been present at

17

levels above the Massachusetts' Maximum Contaminant Level ("MA MCL") for PFAS6 and/or the

federally advised Health Advisory Levels for PFOA and PFOS.

79.     The detection and/or presence of PFOA and PFOS, and the threat of further

detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at

varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff.

It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS on Plaintiff's

Property requires investigation, remediation, and monitoring.

80.     Plaintiff has conducted and continues to conduct sampling, studies, and

investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct

sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment

approaches, and costs to analyze available alternatives.

81.     The invasion of Plaintiff's Property with PFOA and PFOS is continuous and

recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—

the result of which is a new harm to the Plaintiff and its property in each occurrence.

82.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable

interference with, and damage to, Plaintiff's supplies of fresh drinking water. Plaintiff's interests

in protecting the quality of its water supplies constitutes a reason for seeking damages sufficient to

restore such drinking water supplies to their pre-contamination condition.

83.     Through this action, Plaintiff seeks to recover damages (including but not limited to

compensatory, punitive, and/or consequential damages) arising from continuous and ongoing

contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages

include, but are not limited to, the past and future incurred costs associated with the investigation,

remediation, restoration, monitoring, and treatment of Plaintiff's Property as well as the costs

incurred to acquire an alternative water supply.

18

**FIRST CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

84.      Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated in this cause of action.

85.      Defendants were in the business of producing, making, fabricating, constructing,

designing, marketing, and selling AFFF containing PFOA and/or PFOS.

86.      All of Defendants' AFFF products were manufactured for placement into trade or

commerce.

87.      Defendants marketed and sold AFFF for use in controlling and extinguishing

aviation, marine, fuel and other shallow spill fires.

88.      As manufacturers, Defendants owed a duty to all persons whom its products might

foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous

in design for its reasonably anticipated use.

89.      By manufacturing and selling PFAS-containing AFFF, Defendants warranted that

such AFFF was merchantable, safe, and fit for ordinary purposes.

90.      Defendants breached that warranty as PFAS-containing AFFF is unreasonably

dangerous for its reasonably anticipated uses for the following reasons:

 a.   PFOA and PFOS cause extensive groundwater contamination, even when used in

      their foreseeable and intended manner;

 b.   Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for

      consumption;

 c.   PFOA and/or PFOS pose significant threats to public health; and,

 d.   PFOA and/or PFOS create real and potential environmental damage.

19

91.     Defendants knew of these risks associated with PFOA and PFOS, and failed to use reasonable care in the design of its AFFF products.

92.     AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as the Plaintiff and the general public.

93.     At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent the Plaintiff's damage.

94.     The risks posed by PFAS-containing AFFF far outweigh the products' utility as a flame-control chemical.

95.     The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Plaintiff's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

96.     Upon information and belief, users and consumers of Fluorosurfactant Products relied on Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

97.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

98.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with

conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's

property rights.

## SECOND OF ACTION
### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY FAILURE TO WARN

99.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated in this count.

100.    As a manufacturer of PFAS-containing AFFF, each Defendant had a duty to provide

adequate warnings of the risks of these products to all persons whom its product might foreseeably

harm, including Plaintiff, the public, and public officials.

101.    PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated

uses for the following reasons:

   a.  PFOA and PFOS cause extensive groundwater contamination, even when used in

       their foreseeable and intended manner;

   b.  Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for

       consumption;

   c.  PFOA and/or PFOS pose significant threats to public health; and

   d.  PFOA and/or PFOS create real and potential environmental damage.

102.    Defendants knew of the health and property damage risks associated with

PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary

reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS-

containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its

property.

103.    Despite Defendants' knowledge of the environmental and human health hazards

associated with the use and/or disposal of PFAS-containing AFFF in the vicinity of subterranean

21

drinking water supplies, including contamination of public drinking water supplies with PFOA

and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding

PFAS-containing AFFF to Plaintiff, governmental agencies, or the public.

104.    Plaintiff would have heeded legally adequate warnings or would have taken steps to

prevent potential exposure and contamination of its Property.

105.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has

suffered, and continues to suffer, property damage requiring investigation, remediation, and

monitoring costs to be determined at trial.

106.    Defendants knew that it was substantially certain that its acts and omissions

described above would threaten public health and cause extensive contamination of subterranean

drinking water supplies. Defendants committed each of the above-described acts and omissions

knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless

disregard for the health and safety of others, and for the Plaintiff's property rights.

### THIRD CAUSE OF ACTION
NEGLIGENCE

107.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated in this count.

108.    As a manufacturer and seller of PFAS-containing AFFF, each Defendant owed a

duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care

in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

109.    Defendants knew or should have known that PFOA and/or PFOS were leaching

from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating

water resources.

22

110.    Even though Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

    a.  Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing AFFF;

    b.  Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Plaintiff's Property;

    c.  Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

    d.  Failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

111.    As a direct and proximate result of Defendants' negligence, the Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

112.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## FOURTH CAUSE OF ACTION
### TRESPASS

113.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

23

114.   Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

115.   Defendants manufactured, distributed, marketed, and promoted PFAS-containing AFFF with the actual knowledge and/or substantial certainty that PFAS-containing AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

116.   Defendants negligently, recklessly, and/or intentionally produced and marketed PFAS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's property.

117.   As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

118.   Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.   Compensatory damages according to proof including, but not limited to:

    a.   Costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's Property;

24

b.  Costs and expenses related to past, present, and future treatment and remediation of
PFOA and/or PFOS contamination of Plaintiff's Property;

c.  Costs and expenses related to past, present, and future installation and maintenance
of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's
Property;

d.  Costs and expenses related to the past, present, and future installation,
maintenance, and purchase of alternative water supplies.

2.  Punitive damages;

3.  Consequential damages;

4.  Pre-judgment and post-judgment interest;

5.  Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial pursuant to Massachusetts Rule of Civil Procedure 38.

Dated:   September 28, 2023

Respectfully submitted,

    */s/ Richard Sandman*
Richard M. Sandman (BBO # 440940)
**SANDMAN LAW, LLC**
501 Congress Street, Suite 2021
Boston, MA 02210
Telephone:  (978) 886-0640
rich@sandman-law.com

Scott Summy (TX Bar No. 19507500)
Cary McDougal (TX Bar No. 13569600)
Carla Burke Pickrel (TX Bar No. 24012490)
Jason Julius (TX Bar No. 24131101)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281

25

Telephone: (214) 521-3605
Fax: (214) 520-1181
ssummy@baronbudd.com
cmcdougal@baronbudd.com
cburkepickrel@baronbudd.com
jjulius@baronbudd.com

Philip F. Cossich, Jr.
Brandon J. Taylor (LA Bar No. 27662)
Darren Sumich (LA Bar No. 23321)
David A. Parsiola (LA Bar No. 21005)
Christina M. Cossich (LA Bar No. 32407)
Andrew Cvitanovic (LA Bar No. 34500)
Luana N. Smith (LA Bar No. 35534)
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone:  (504) 394-9000

*Attorneys for Plaintiff*